Although I am ready to answer any questions the Court has on the search and restitution issues, I would like to focus this morning on the statute under which Mr. Pepe was charged in conviction, that's 2423C, which makes it a crime for a U.S. citizen to travel in foreign commerce and then engage in sexual acts in a foreign country. The first question is whether that act applies to people who are residents of the foreign country. It doesn't, and that's significant because the government doesn't dispute that the trial evidence establishes that Mr. Pepe was a resident of Cambodia at the relevant times. So if the statute doesn't apply to such residents, then his convictions must be reversed. The statute's plain language covers citizens. Robert R. Reilly So what you're saying is the statute doesn't apply to an American citizen who doesn't travel, he just lives in a foreign country? Michael Pepe Correct. Robert R. Reilly I'm trying to think who that could be, and the only ones I can think of right offhand are people who were born to American citizens abroad and stayed there. Maybe military and spouse stationed in Germany and they just stay in Germany. Michael Pepe Yeah, I'm not saying the statute is read that restrictively. Mr. Pepe doesn't fall into that class of people. What I'm saying is the statute does not apply to people who travel to a foreign country and set up a residence there, as opposed to people who travel there for some temporary basis with the intent to return home. Katherian Roe I think your argument is not a bad one, but you're running into Clark, which this panel is bound by. So how do you address that? Michael Pepe Well, Clark, I think, is going to be very useful when we get to the Commerce Clause issues. But for this issue, the construction of the statute to not apply to residents, Clark just never talked about that. The facts of the case were that Clark was a resident, but this issue was never raised. It's one of those issues that merely lurks in the record, never brought to the attention of the Court by the parties, never ruled on. So this is an open question. And I think that the things that support our statutory instruction argument are the Court's recommendation to Mr. Clark that someone who permanently resettles in a place is no longer traveling, even under the broadest interpretation of that word. And then you have the title and the legislative history of the statute, which says that it's designed to combat sex tourism. A person is not a tourist where he lives. And perhaps most significantly, the 2013 amendment to 2003… Robert R. Reilly Where is the title? The sex tourism language? It's… Where in the record is it? No, no. Where in the statute is the sex tourism language? I'm looking at a version that doesn't have it. It's in the Act. It's not in the statute that made it into the U.S. Code, but if you look at the Act, and it's on page 44 of the AOB, it's the site. So if I look in the code, I won't find it, but if I look in the Act, I will? Yes. It'll say penalties for sex tourism. And then also we cite in the briefs, both of us cite to a House report which further emphasizes this is all about sex tourism. Then we have the 2013 amendment to the 2423, which expressly adds residents to the people covered by the statute. So, which is, of course, not the one that's relevant to Mr. Pepe's case, but because the Court presumes that Congress intends its Acts to have, amendments to have real and substantive effect, the fact that they designed it to fill in a loophole, well, a perceived loophole to cover residents, is very strong evidence that it didn't cover such people before. I understand the arguments, but what I don't understand is how you're distinguishing Clark, because it's factually pretty similar, given the way that the Clark panel interpreted this particular statutory language of traveling in foreign commerce and engaging in illicit conduct. It seems to fit this case as well. Setting aside the constitutional problems, which I'm assuming you're going to talk about, with regard to the application of the statute to the conduct at issue here, I think it seems to me that Clark controls. I disagree, Your Honor, because I feel that when, when in a certain factual scenario, the Court applies a statute and says it can be applied for these reasons because we're It doesn't mean that when somebody like Pepe comes along and says, here's a different reason why it doesn't apply to him, something you never considered in Clark, the mere fact that factually the defendant in Clark was similar to Mr. Pepe does not preclude the Court from reaching that issue. This issue, if the Court addressed a lot of issues in Clark, but the one thing it never did was say, does this apply to residents by its plain language? But of course, encompassing all of this, too, the last thing the Court has to remember is the rule of lenity, which means to the extent there's any ambiguity about whether residents are covered, it has to be resolved in Mr. Pepe's favor. But now turning to the key issue in Clark, which is the Hold on. I had trouble understanding what you just said, so I just need you to say it again in different words. How do you distinguish Clark? Clark is distinguished because this particular issue was never before the Court, so it never ruled on this issue. It was never raised by the parties. It may be that Which issue was not before the Court? Whether or not, as a matter of statutory construction, Section 2423C applies to American expatriates, people who are residents residing in a foreign country, not people who are merely temporarily traveling to a foreign country. And your argument is that even though Clark fell into that category, that that issue was not presented. Correct. So, but the issue that was the heart of Clark was the Foreign Commerce Clause issue. And as we said, you know, for the reasons given by Justice, Judge Ferguson in his assent, we disagree that it's constitutional at all, but we realize that that's a matter for an hour, for another day. Why wasn't the issue of expats presented, since the fact was that Clark was an expat? I don't know, Your Honor. I mean, why shouldn't we treat it as presented, because the facts of the case involved an expat? I would just point to what we cite in the brief, Webster v. Fall, which is a Supreme Court case that's been a long time, been around a long time, and says that issues that merely lurk in the record, neither brought to the attention of the Court, nor ruled upon by the Court, are not precedents that bind future panels. And I think that's the reason why. But I think the key thing here is the issue that was expressly left open by Clark, namely whether the Foreign Commerce Clause requires some limit on the temporal gap between 2423C's travel and Section 8X elements, and if so, what that gap is. Judge Ferguson's dissent in Clark recognized that Congress will have impermissibly broad police powers if the Foreign Commerce Clause is interpreted to allow Congress to regulate every act with a bare economic component that happens after international travel, even if that occurs months or even years later. It was undoubtedly those significant and legitimate concerns that made the majority in Clark narrowly hold only that a gap of less than two months did not offend the Constitution, and leave for another day whether a larger gap would. And the larger day, the day has come because in this case, to the extent the government was managed to prove the timing of the sex acts at all, they occurred many months after — I have trouble with making things depend on the gap. For one thing, it makes the courts do something that ordinarily would be in a statute of regulation, drawing a bright line, two months is one thing, six months is another, and draw a line at, I don't know, seven weeks or something like that. I have trouble with the idea that we can do that. I can imagine, suppose you have someone who's considering a job in Cambodia, and the job means he's going to stay in Cambodia for a year, and he's deciding whether to take the job, and he happens to have a sexual attraction to young children, and he thinks, well, that's a good reason to take the job. And he doesn't actually act on his sexual attractions until job pressures ease up during the 10th or 11th month he's here. Why wouldn't that be covered by the statute? Because I think that there — first of all, I agree with your honor, there is some — it is unusual for trying to pick up some place in time where the gap becomes too long. But that's where we're at, because the Clark majority, over Judge Ferguson's dissent, said that the statute is entirely unconstitutional. I thought Clark was perfectly sensible. There's no alternative view that makes sense to me, that you don't have to do it on a plane. Right, right. But, I mean, I think that what we have here, we have the polls of Judge Ferguson's dissent saying this statute isn't constitutional, it's not a valid exercise of the Foreign Commerce Clause. You have the government's position, which was endorsed by the district court, which says there is zero — there is no time requirement whatsoever. If you travel today, stay in a country for 50 years, commit a sex act, that is chargeable under the statute. And that, I think — I would hope the court would agree, at that point, there is no legitimate nexus to the Foreign Commerce Clause. Under the new statute, that's fine. You can be an expat who's never been in the United States, and if you're a U.S. citizen and have sex with children in your native country, even though it's not your country of citizenship, you're a felon under U.S. law. That's true, although I will say that the court, I'm sure, will one day have somebody convicted under that statute that's going to say, well, what is the Foreign Commerce Clause basis for that provision? That's not this case, because he was charged under the old law, but I think there would be significant problems under the new law. So before you go on, your argument is on the constitutional basis, and your argument is that at some point, the gap gets too long to be constitutional. How can we rationally determine how long the gap is? I think that it has to be relatively short, and the court's only limit is the less than two-month limit. Right. I understand that. But now we're in a different... Right. And I would say that that should be the maximum, because all of the things that kind of support the commerce law theory, which is that the Foreign Commerce Clause can be invoked to travel in foreign commerce. That's the jurisdictional hook. So the farther you get away from that, the more tenuous things become. You're not even arguably regulating commerce with foreign nations anymore. And I think that, particularly when we go back to the legislative history and text in the Act that says this is about sex tourism... Here you are. You're purchasing sexual services. It's... Conceptually, it seems to me it's the same thing as saying Congress can prohibit American citizens from conducting commerce in Cuba or Iran. The concern is with American dollars or with American citizens using any kind of money to buy anything in Iran or Cuba. Well, I'm not familiar with the exact language of this law, those laws, but with this law, the key fact is that the Foreign Commerce Clause gives Congress the power to enact laws dealing with commerce with foreign nations. We must be clear that it does not mean they can regulate commerce within foreign nations. You're saying it's too untethered from any channels of commerce to be constitutional. Do we need to reach the Foreign Commerce Clause question if we find that Congress had the power under the Necessary and Proper Clause to enact a statute? I don't think you do, but if the Court doesn't have any other questions on the Commerce Clause, I'd like to turn to that. Can you address that? I think that that's clearly not a legitimate basis to do that. I'll first start out with pointing at what the concurring justices in Bond versus United of reading the treaty power in connection with the Necessary and Proper Clause very broadly, because, again, we're talking a situation where it could grant Congress and the President broad police powers. All they would have to do is to... And I think those criticisms and commentary, they're valid, but what about Holland? Well, I think that Holland, I mean, even after... I mean, Holland's been around, but even after Bond and this Court in Fries, it was significant. It said, well, we're going to follow this reasoning of Holland, but we're doing it because the Chemical Weapons Convention Implementation Act goes to the core heart of the treaty power. It deals with matters of war and peace. So I think even then the Court recognized that you can't just enact a treaty on any general subject matter and then enact any legislation remotely connected to that subject matter. But I think the Court can leave to another day exactly what the limits of the treaty power are, because the most significant thing we have here is the Court never invoked that power. I mean, I'm sorry, Congress never invoked that power. Congress clearly invoked the Foreign Commerce Clause. You know, the predecessor, actually, first of all, this Court in Clark actually said explicitly the phrase travels in foreign commerce unequivocally establishes that Congress specifically invoked the Foreign Commerce Clause. I just don't understand something about your argument, and I need clarification so that I can understand it. Clark says it's within the constitutional powers of Congress to regulate an American having, purchasing sex in a foreign country. It seems to me that that's a simple and common application for all sorts of commerce, not just sex. For example, regulating an American engaging in commerce in Iran or in South Africa under apartheid or in Cuba before the sanctions were eased at the end of the last administration. It just seems routine, and it seems like it's straight down the middle of the sort of regulation of commerce with foreign nations by Americans that the Constitution empowered Congress to do. And it looks like just what Clark was directing its attention to. I just don't understand what the problem is, really. Well, I disagree with, I think, how the Court's characterizing Clark, because Clark didn't just say that in a limitless fashion. It said, we are upholding this because there's a gap of less than two months, and therefore I don't know if they said because of. They mentioned that gap, but they left it in the air whether that was really critical or how long the gap could be. They just didn't have occasion because of that gap to address, say, my hypothetical American who was born on an American military base in Iran, never left Iran, has had his whole life in Iran, never even traveled, and engaged in transactions in Iran violating the Iran sanctions. And since he's an American citizen, I don't understand why Congress couldn't regulate him even with no travel at all if he engaged in commerce with Iran. Now you've got a separate statutory construction argument, which is essentially Congress, whether it could or it couldn't, it didn't regulate sex by expats, sex by people who never traveled or traveled so long ago that the travel's irrelevant before the amendment. But that's separate. On the constitutional argument, I'm just not getting it, I guess, because I keep thinking about sanctions instead of sex. Well, Your Honor, unfortunately, I'm not familiar with those statutes. The government didn't cite them. I'm not familiar with them. But you're familiar that, you are undoubtedly familiar, if you've ever gone to Canada or England, that you couldn't bring Cuban cigars back. Right, but given the hypotheticals Your Honor gave, for example, the person who never leaves the country but engages in foreign commerce with Iran, that is, there's no jurisdictional issue there. Somebody's engaging in commerce with a foreign nation while on American soil. Well, with a foreign person in a foreign nation, ordinarily, I mean, in a dictatorship, it may be that you do your business with the foreign government, but most foreign commerce is with foreign firms and individuals. Right, and I think the Court has interpreted foreign commerce to be commerce more than just with the foreign government itself. But I would like to point to Clark on page 1116, where it says, The combination of Clark's travel in foreign commerce and his conduct of an illicit commercial sex act in Cambodia shortly thereafter puts the statute squarely within Congress's form of the Commerce Clause Authority. So if the Clark Court thought that it didn't matter, that the timing didn't matter, it would not have gone out of its way twice, both there and earlier when it expressly reserved this issue, to say that it did matter. I have a little bit of time, and if I wish, I would like to respond to Judge Wynn's question if that's okay. Sure, why don't you finish that, and then we'll give you a little time, please. Thank you. Going back to the treaty, again, putting aside the pot, what the exact scope of Congress's treaty powers are, they must be clearly invoked, and that didn't happen here. All the evidence we have is that the Clause Authority stands for the proposition that Congress has to clearly invoke, particularly the necessary and proper clause power for it to be valid. I couldn't find one. I do know that, for example, like in Bond and Fries, you know, you look at the statutes there, and Congress knows how to say we are the Convention Against Torture Act Implementation Bill, you know, so usually they say it explicitly. But I think what's more significant is no appellate court has bought the argument that 2423 can be supported under this provision, and the government hasn't pointed to anything that allows this kind of inference of the use of the treaty power just by the series of events. Even when you have, as we pointed out in the briefs, at the time the optional protocol was enacted, both the State Department and the Senate said we already feel that our obligations under this treaty are fully complied with by the statutes already in the books, therefore we do not plan to enact anything else. To say that then the mere fact that a statute dealing with the same subject matter was amended after that, and then you can infer, well, despite what they said, they really wanted to use the treaty power, would take all of the dangers that Justice Scalia recognized in Bond about the expanse of treaty powers and make them ten times worse, because you don't even have Congress abusing the treaty power. You have courts, by inference, letting that power be abused. Thank you, counsel. Thank you. We'll hear from the government. May it please the Court, Nancy Spiegel for the United States. I'm here with co-counsel at AUSA, Patricia Donahue. And how have you divided your arguments? Yes, Your Honor. I'll be addressing the statutory arguments and Ms. Donahue will address the sentences and the restitution issue. Oh, okay. Since you're the statutory argument, I have a question that's been troubling me that's just the statutory argument, no constitutional aspect. I read the statute as it was then, and it says, any U.S. citizen who travels in foreign I could read that one of two ways. I could read the and to mean if you've traveled in foreign commerce and you've engaged in the sexual conduct, that's all it takes. That's the government's way of reading it, and it's consistent with the words. The other way I could read it is that the travel must be connected in some way, because otherwise the word travels would be either absurd or surplusage. Congress can certainly just prohibit American citizens from engaging in sex with minors in foreign countries the same way that it prohibited until recently American citizens from buying cigars in Cuba, assuming that both are constitutionally okay, which you and I are assuming. And in support of that inference, I've got this amendment where they said it doesn't matter whether you travel or not. If you reside in a foreign country, it's good enough to get you convicted. And that may mean that they didn't mean that before they amended it, or it may mean they thought it was unclear. Either way, you've got an ambiguity, and if you've got an ambiguity, you're supposed to And applying the rule of lenity doesn't seem absurd. For example, a woman's husband dies, and she moves to a country where she can live cheaper on life insurance. And she's there for 10 or 20 years after she moved there. She had to travel to it to move to that place, and she has a little affair with a beach boy. She's guilty under this statute of the felony, and it seems unlikely the Congress meant to do that under a statute that it said was to prohibit sex tourism. Why don't we have to apply the rule of lenity, which says if there's, if the statute's ambiguous, if you could read it one of two ways, you've got to read it in the way that criminalizes less behavior. Why don't we have to apply the rule of lenity in the context I just described to you? Okay, well, the short answer, Your Honor, is that Clark has already said that the statute is clear and unambiguous. I don't know if it said it in this context. I mean, the issue that Clark says it's resolving is whether Congress exceeded its constitutional power to regulate foreign commerce. That's correct. So, but even so- So I don't know if an incidental remark in Clark that's not directed toward its holding has to be taken as though it were holding. Well, I think it did look at the statute that way. It's also clear that this, to me anyways, that the statute is silent as to this temporal issue, not ambiguous. I think there was a lot of legislative history. This was not limited to sex tourism. The concern was that the current statute at the time, 2423 section B, required the intent element and this legislation was passed so that a United States citizen traveling to a foreign country did not have to have the intent before he or she traveled. That was sort of what section C was meant to fix. So- So it doesn't have to say that the reason, you don't have to prove that the reason the person went there was just to have illicit sexual activity. Fine. Okay. That doesn't really deal with my rule of lenity concernfully, I don't think. Well, it's because I think the and is not ambiguous. I think the and indicates that Congress- Okay. What about my widow and the beach boy? Is she a felon under the statute? Well, it just depends. I don't- Well, I don't know what it depends on. I want to know if the widow who's been living in Belize for the 10 or 20 years since her husband died, living on insurance in Belize and gets it on with the beach boy, is she a felon under the statute? If it's unambiguous, you should be able to tell me. Well, under the current version of the statute, she could be. Well, under the current version, no question about it, but that's not the version that this fellow was convicted under. Would she be a felon? She could have been. But I think the question here can be resolved just based on the facts here where we only have- Well, how we resolve it based on the facts here is going to affect the elderly widow who gets it on with the beach boy in Belize. So we can't make law and say this case only. No, but what I'm trying to explain is that I think Clark and Jackson together kind of say that there is no temporal element in this statute. And yes, while there may be a case someday, somewhere, where the nexus between the travel and the illicit sexual conduct becomes an issue, that's not the case. Let's say we're all worrying about the elderly widow when we write the opinion. How do we write it so that it doesn't make her a felon if you think that she should not be? Or how should we write it to say she ought to be a felon? Even under the old statute, the new statute clearly makes her a felon, but the old one, that's what I'm worried about because that's the statute of conviction. Well, your hypothetical is that she's having sex with a minor, correct? Yeah, yeah, beach boy. So, and she's lived there for years? Yep. Yep. But she did travel from the United States at some point. Years ago, after her husband died and she got the insurance. Okay, you know, she could be liable, yes. It just depends. So we should say in the opinion this would apply to her? Or we should write it in such a way that it clearly would apply to her? Well, it might. I don't think we could definitively say. I mean, here... Suppose a dissent raises the elderly widow and the majority has to deal with the elderly widow hypothetical. How does it deal with it? Well, I think clearly, you know, under the statute, she would be liable and she should be liable. I don't know why the government needs to really take that extreme position. The elderly widow example, or somebody who was brought from the United States, say to Japan or Cambodia as an infant and grows up there, never having given up citizenship, could under your argument still be prosecuted? Because you're saying no temporal requirement, no nexus requirement. I think at some point, which is not the point in this case, I don't know where that point is. I don't think that's the issue presented here. I think the court can resolve this on the facts by saying that the amount of time that elapsed here, which was as the defense... Wait a minute. Resolve on the facts just mean we say guys with green sweaters who do it, go to jail. Guys with red sweaters do it, don't go to jail, unless you can give me a reason for the distinction. Judge Nguyen just asked you a question, does the government really need to go that far? And you said, well, not in this case, but that doesn't help us write the opinion. I want to know how we avoid going that far, if we accept the government's argument. By saying that under the facts of this case, which are just a number of months after the travel, that it's not... It doesn't raise an issue of constitutional concern under Clark. Are you addressing the search warrant? I'm switching topic and let's just... I'm going to address the search warrant. You're going to address the search warrant? No, I'm sorry. My colleague is going to. Okay. Well, just as a matter of statutory... How do you apply Jackson as context? Are you taking the same position the government did in Jackson, that as a matter of statutory interpretation, you just have to have travel and there's no... The permanent residency has nothing to do with it? Yes, that's correct. The statute is, again, not ambiguous, but silent. Residence is irrelevant to this statute. Here, we have a United States citizen who traveled in foreign commerce and engaged in illicit sexual conduct with minors. That's all the elements of the statute that are required. The travel then is just a jurisdictional requirement, like in gun cases where the gun is made in some other state? Yes, absolutely. Your interpretation would also make a felon of someone who was natural born on American soil and brought immediately as a baby to a foreign country where he or she lived the rest of his or her life and had sex with a minor? The person... Well, possibly. Again, that's... Brilliant. Under your interpretation, then, there really is no limit. You just want us to leave whatever the limit could conceivably be to some other panel in some other case? That's right. I think that the limit is far from reached under the facts of this case. Right. You're sort of suggesting a Jackson approach, but I recognize that Jackson Court didn't reach it, but here's what it says. The government's position that travel can go on infinitely, even if a citizen permanently resettles abroad simply does not comport with common usage of the term travel standing alone. Now, I realize that's dicta, but what's wrong with that analysis? Well, first of all, you know, under the... Now the current statute. No, I'm talking about interpreting the old statute. But yes, no, I agree with that, that there is a... I said that, I hope, that there is a point where it's too attenuated. That's not the point, not even close to the point. Where is that point? Well, I don't think, I don't think there should be a bright line point. I think it needs to depend on the reasonableness of all the facts in the case. I think you have to look at it all together. Jackson also said that a lapse in time between travel and the Sex Act will ordinarily not preclude prosecution under the statute. We have a concept, I'm sorry to interrupt, but we have a concept in immigration law called resettlement, which is, and there are measurements that we apply to that. Why isn't that maybe the more logical way to look at this statute, is that when you permanently resettle in another country, then there ceases to be a causal nexus with, or a nexus with, not a causal nexus, but a nexus with travel? Because the statute doesn't suggest that at all in legislative history. Why would you, I mean, returning to Judge Kleinfeld's question, why would you use the word travel then? Well, what I was trying to explain is because this was sort of a way to broaden the reach of 2423B, which was also a travel statute, I think that's why. The two, the nexus is the travel and the foreign commerce, which here, of course, we have the commercial nexus. We did have special verdicts in the case on all seven counts that they were commercial sex acts. So we have that nexus in any event. But I think now, when you look at the post-amendment statute, the travel is not necessary. So... Yeah, I'm not talking about the constitutional argument, I'm strictly talking about statutory interpretation. And, of course, your opponent argues with some force, look, it added residency and under the tools of statutory construction, you would say, well, apparently the old statute was intended not to reach that. I'm leaving aside Clark and the implications of that. But it's a, just as a pure statutory interpretation question, it poses some issues. Well, as to the 2013 amendment, and unfortunately there's not much legislative history there, so we can only be surmising, but it's our position that it closed loopholes in the terms of both the expat who doesn't travel, also a U.S. citizen who travels among foreign countries who would not have been subject to the pre-amendment statute. So I think it did apply to residents before the amendment and it applies to a couple of extra groups of people who were not covered prior. If there are no questions on that, I think we should let Ms. Donohue argue. Thank you, Your Honor. I will leave the Court, Patricia Donohue, and I will address the search and restitution issues. And I believe Judge Nguyen indicated you have a question regarding the search. with regard to statutory interpretation, being that there's no temporal nexus requirement between the travel and the commerce, that's what's creating the constitutional concern, right? Because the government's argument isn't that, you know, at some point the gap between travel and the commercial sex acts could be so great that it might not be covered. But that's not this case. So I didn't hear the government arguing that. The government argued that it doesn't have to be of any particular duration. So the widow would then fall under the statute. The infant who was brought overseas would then fall within the statute. I think that gives rise to constitutional concerns under the foreign commerce clause. How do you address that? I will address that. That is the argument that my co-counsel is addressing. You're just addressing search and seizure. I am. I certainly can address that. Well, that's a concern I have, but we'll have to explore that with the panel. Moving to the search, can I have you address the search in Singapore, how that's different from the search in the U.S. such that one requires a warrant but not the other? Yes, Your Honor. As the district court found, the search in Singapore was part of the joint venture with Cambodian law enforcement. The search of the defendant's rental home in Phnom Penh was on June 20th. Almost immediately thereafter, the Cambodians asked for assistance to search some, but not all, of the pieces of computer media that had come from the Cambodian residents. The district court found that it was a joint venture between Cambodian and U.S. law enforcement. In assisting Cambodian law enforcement, the local agent had the computer examined at the closest forensic examination facility, which was in Singapore. The search was part of an ongoing joint venture between the Cambodians and the U.S. At the time, the defendant Pepe was under investigation by the Cambodians, so was Basong, the procurer, who ultimately testified at her deposition. She was prosecuted in Cambodia and convicted in serving a lengthy sentence. The Cambodians were also investigating mothers of three of the victims who had provided their children to the defendants. So the Cambodians, as well, they were investigating some of the other allegations involving other people who were at the house the day of the search. One of the victims... But what makes the Singapore search part of the joint venture, but then not the search in the U.S. afterwards? It was all done pretty seamlessly, right? The Cambodian local authorities investigated along with U.S. authorities, and then the computer was turned over. Had that computer been taken immediately to the U.S. instead of to Singapore, I'm assuming at that point, a search warrant would have been obtained. Yes, Your Honor, although to return to your question about the seamlessness, the search of the house on June 20th and then the sending of the computer and the search of the computer in Singapore on June 30th were part of a seamless joint investigation. There were other pieces of media that the Cambodians turned over, ultimately, to ICE. At that point, when it seemed more clear that the Cambodian government was going to send the defendant here for prosecution, ICE shipped all of that other computer media to the United States. One theory would have been that we could have concluded that that was still part of the Cambodian investigation because the Cambodian investigation was still going on. But since we had the media here, and since under Rule 41 at the time, the property has to be located in the district where the search is, since we had the property in this district, the government obtained a warrant. It sounds as though you're saying that once the prosecution was returned to U.S. soil, that was no longer a joint effort. Is that right? Judge Nguyen was asking you whether it was a seamlessly joint investigation between Cambodia and the United States throughout the entire investigation. And in listening to your answer, it seems to me you're saying that joint investigation really ended when the material was returned to U.S. soil. Is that right? Well, as the beginning of the investigation, as the district court found it was not a joint. But after that... Because I thought your response to my question was that the reason why a search warrant wasn't necessary in Singapore is that at the time that the search was conducted in Singapore, was it at the U.S. Embassy, the computer at this point, or consulate facility? The record is silent as to whether, in fact, it was the forensic examination was done inside the consulate. It was done by the ICE forensic agent who was assigned to the Singapore office. All right. But I thought your response to my question was that at the time that the search was done in Singapore, the investigation was still very much focusing on helping the Cambodian government because not only was Mr. Pape being investigated and possibly facing prosecution in Cambodia, but also his co-conspirator was being looked at for prosecution as well. But once the materials came to the U.S., a decision had been made in order to – I'm trying to rephrase what I'm understanding your argument is, a decision had been made to prosecute Mr. Pape in the United States, and that's why it was no longer part of the joint venture. Am I understanding that argument correctly? Yes. That is correct. Once the decision had been made to prosecute Mr. Pape in the United States, he was brought to the United States, and the case against him in Cambodia no longer existed. Right. So the joint venture ended. Yes, Your Honor. Okay. Now, the question is, when did it end? I mean, because it seems to me that's the critical factor for the lawfulness of the search. I mean, you would agree if there were no joint venture, then the search and seizure was unreasonable in Cambodia. The search and seizure of the computer? Yes. Okay. Not the items at the residence? Right. Okay. Yes, Your Honor. Okay. So that's dependent on the joint venture, and because the search and seizure was legal under Cambodian law. Are we agreed on that? The search and seizure was legal under Cambodia? Legal. Yes. The district court found that. Now, here's my question. Is it when the computer was taken to the embassy, under what authority was the material in the computer examined and seized? I mean, in other words, often you may seize material for the car, and then you get a separate search warrant, and often that's true with computers. You seize it without a warrant, you get a separate warrant later. So my question is, what's the state of the record as to whether it was a joint investigation at the time ICE had the computer and examined the contents? The state of the record is that it was a joint investigation, and an expert on Cambodian law testified that the search of the computer was legal under Cambodian law. He explained in some detail how Cambodian law works, and explained to the court that the search of the computer done by the U.S. authorities at the request of the Cambodians was legal, was authorized by the Cambodian search warrant. Okay. Thank you for the critical— Go ahead. Could I ask you a question about restitution? I know you're over time. That's all right. No. Yes, go ahead. The presiding judge will allow it. Restitution is limited under the statute to necessary physical, psychiatric, and psychological care, necessary physical and occupational therapy and rehabilitation, lost income due to injuries and lost income, and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense. Here there are these two private organizations, non-governmental organizations in Cambodia, and their spreadsheet looks like it includes all kinds of stuff outside that. They want maintenance to their building, and they got it all. The salary of a case manager, money to run the NGO, dental and cosmetic surgery, even though there's nothing to suggest that the girls would need dental or cosmetic surgery because of the sex abuse, salaries for staff, costs for staff, cell phones, office supplies, and even money for staff appreciation, holidays, birthdays, and local trips, an advocacy fund. It looks like the charity is preying—or the two charities may be preying off these money that is attached to the victims to run their non-profits. If this case had taken place in America, I think the girl would have just been sent to live with an aunt or a grandmother or something, and there wouldn't have been all this huge money to run some non-profits orphanage. I don't understand how that restitution order can stand. Well, first of all, Your Honor, as we discussed in the brief, we submit that this wasn't raised at all by the defense in the district court. I thought they objected to the restitution. The defense objected to—they said that under the section 2248, which is not the applicable statute— Actually, what happened was the probation officer calculated the restitution under the And then the defense didn't tell the judge to do the restitution under that statute. The probation officer already had, and the defense still objected to the restitution. The defense objected to the restitution on the ground that under section 2248, a guardian of a victimized minor is not entitled to restitution. So essentially, the defense argument was that the two non-governmental organizations didn't have standing to come and sort of step in the victim's shoes under the statute. That was the argument that was advanced. Under the statute that the probation officer had justified the restitution under. As I recall, neither the probation officer nor the government sought restitution under the proper statute. They both sought restitution under the wrong statute, and what the defendant argued was under that statute, restitution can't be awarded. Your Honor— Am I wrong on that? Yeah, slightly. The defense— Okay. Help me then. Sure. The defense and the probation office both cited the court to section 2248, and the defense argued that the non-governmental organizations were not entitled at all to get restitution under that statute. Am I right on the sequence? The way that wrong statute got raised was by the, not by the defense, but by the probation officer saying, award this amount of restitution under this statute, and then the defendant subsequently citing the statute that the PO had relied on said, no, you can't. Yes. That's correct, Your Honor. However, the government, both in its initial sentencing position and in its response to the defense position, pointed out the correct statute. The government pointed out that 2248 did not apply, and that it's section 316, 18 U.S.C., section 3663, capital A. But did the government tell the judge when the judge— Yes. Listen to my question first. Did the government tell the judge when the judge said, well, I'm going to do what the PO says, no, Your Honor, that's a mistake, it's the wrong statute? Yes. The government told the court the correct statute, and— When? I just referred to a specific time. I can't tell whether you're saying the government had told the judge before the sentencing in its own memo what the correct statute was, but then did not tell the judge when the judge said, well, I'm going to, as judges usually do, adopt the probation officer's report on this, on restitution. Did the government then correct the judge? You understand the distinction? I understand your question, yes. At the—and I—at the sentencing hearing, the court indicated it was going to adopt the government's proposed restitution. The proposal that was in the pre-sentence report was old. There was some litigation between—between the verdict and the sentencing, so the sentencing took place sometime after the verdict. The government had submitted— I don't understand what you mean. What litigation? New trial motion and other matters were pending. Oh, you mean motions, not separate collateral litigation? Not—I'm sorry, Your Honor. Okay. Yes, motions were pending. Okay. So initially, the government submitted a sentencing position citing the correct statute, the sentencing and setting forth the expenses. The sentencing was long delayed. The government submitted an updated restitution request under the correct statute shortly before the sentencing. At the hearing, the court stated that it was inclined to adopt the government's calculations as set forth in its recent submission. The government's submissions always referred to 18 U.S.C. section 3663 capital A, the Mandatory Victim Restitution Act. The defense never at any point addressed that statute or raised the argument that Your Honor does here, that some of the expenses were improper. Assuming the court reaches the merits of that, the statute that applies is section 3663 capital A. And when the crime results in bodily injury to a victim, then the Mandatory Victim Restitution Act, this statute, requires the court to order the defendant to pay an amount equal to the cost of necessary medical and related professional services and devices relating to physical, psychiatric, and psychological care, including non-medical care and treatment rendered in of the place of treatment. The district court heard from the victims both their testimony about the impact of this crime on them. The district court also received considerable written material about the impacts of this crime on the victim. And the district court heard from the two non-governmental organizations that were caring for them. And Your Honor is right. If this crime had occurred in the United States, the victims could have been sent to live with a family member. As the district court heard, because the non-governmental organizations explained in some detail, that wasn't possible in Cambodia because these victims were trafficked, were given to the defendant by their families. And if they were returned to their families, there was a very high risk that they would be simply re-trafficked. So there was not a safe place. Did the mother sell the girls or did the whole extended family sell the girls? Well there were seven girls. Some were sold directly by the mother. Some were sold by an aunt or someone else in the extended families. But these girls came from a community within that part of Cambodia that is extremely vulnerable to this type of exploitation. So the district court heard that the only viable option for these victims... You mean they came from a part of Cambodia that was so poor that the village or anybody connected with them who could would sell them again? Yes. That families... Yes, in that part of Cambodia it is very common for families to sell their children, particularly to foreigners who have the funds to pay. The district court heard that. The district court also heard that really staying in the non-governmental organization was the only option for each of these victims. And these non-governmental organizations essentially run a shelter where they take care of girls. All you're saying, they could have protected the children from being sold again instead of supporting an orphanage that would take the children away from their families by giving some money to their families from the defendant so they wouldn't be so poor they'd have to That is aspirational. I'm sure that's not what the non-profits would like since they get the money if that doesn't happen. Well, that is aspirational, Your Honor. Well, I think the legal question is this. I mean, we know the district court relied on the wrong statute. True? I mean, it listed the wrong statute. It listed the wrong statute in the Judgment Committee. And the statutes have differences in the restitution that may be awarded. Yes. So I think it may go to the prejudice or harmlessness if there were things awarded in restitution under 2248 that were not permitted under your other statute, 3663 A. I mean, that's the question, isn't it? I mean, there's error. There's no question there's error because the district court relied on the wrong statute. The question is whether the error is harmless, really. Yes. And the district court, given that the district court read the government's papers and stated that it was adopting the government's calculation. And I think Judge Kleinfeld's litany of things that might not be permissible under 22, I'm sorry, 3663 A, why doesn't that say we should just eliminate the confusion? We ought to remand and have a new restitution hearing. The court could remand. The things that the judge listed, however, if you read 3663 A broadly, treatment in accordance with the method of healing recognized by the law of the place of the treatment, the expenses that are incurred by the nongovernmental organization in order to maintain the facility where the victims were required to or had to reside as a result of the defendant's crime fall under 3663 A. Yes, that's your contention. That's our contention. Otherwise, but it seems the district court did its analysis. It meant to adopt the government's position. It just said the wrong statute. It made, I think, a typographical error possibly because the pre-sentence report had referenced the wrong statute. I understand. I'm just trying to divide the issues up so we can decide. All right.  I think I'm well over time. We're well over time, but our questions took you over time, so thank you very much. Thank you. We'll hear rebuttal. Would four minutes suffice? Yes. Thank you. I just want to make two points, one related to the Commerce Clause issue, one related to the Singapore search issue. I think it's very significant here that the government conceded something it didn't in their brief, that there is a point where the sex act takes place so long after the travel that it becomes problematic. And I think that's a very serious concession because the government's approach seems to be, well, why don't you affirm in this case and then we'll bring a case where the gap's a year and see how that's handled, and then we'll bring a gap where it's two years and see how that's handled. And I think what it ignores is a couple of things. One is the rule of lenity, which Judge Kleinfeld mentioned, which is very significant, to the doctrine of constitutional avoidance, which means the court has to not only construe the statute so it isn't unconstitutional, but also to avoid even grave doubts about it. And perhaps the most significant, given the government's concession, is that statutes should not be interpreted so that they're unconstitutionally vague. And by definition, the government's position says that somebody who is traveling overseas will not know what the length of the gap is where they could be hauled into a federal court and face charges under the statute. So I think all of those things require not only a defined gap but a very short gap, and I think the two-month outer limit set in Clark is the one the court should adopt. Now, turning to the Singapore search, I disagree that the question is when did the joint venture end. Keep in mind the joint venture issue is a doctrine that applies to true foreign searches where the Fourth Amendment doesn't generally apply. The courts have said the Fourth Amendment will apply if there's a joint venture in this foreign location and the search doesn't comply with local law. Once, as we have here, the items reach a place of American jurisdiction, and I want to emphasize that in the opening brief we pointed to the statutes and other factors that said that this search occurred at a vice attache office, which was under the U.S. Embassy, and under statutes that's defined as an area of U.S. jurisdiction. And they never disputed that. They also have never disputed that an American judge can issue a warrant that's executable in such locations. So I think that once the items reach such an area, the joint venture doesn't matter at all. It doesn't matter whether they're still cooperating or not. It's as much of an American search as if it took place right here, and in that situation the American Constitution has full force and a warrant's required. So unless the Court has any other questions, I would submit. Thank you. Thank you. Thank you, both, for your arguments. The case, as heard, will be submitted for decision and will be in recess for the morning. All rise.
judges: Kleinfeld, Thomas, Nguyen